NOT FOR PUBLICATION                                                  (Document No. 11)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

|  |  |
|---|---|
| JOE HAND PROMOTIONS, INC., : | |
| : | Civil No. 11-849 (RBK/KMW) |
| Plaintiff, : | |
| v. : | **OPINION** |
| : | |
| ROBIN WALDRON, : | |
| CHARLYNN WALDRON, and : | |
| MANGIA BY THE GREENS, INC., : | |
| Defendants. : | |

**KUGLER**, United States District Judge:

This matter arises under 47 U.S.C. § 605 and 47 U.S.C. § 553 for the unlawful interception and exhibition of an Ultimate Fighting Championship ("UFC") television broadcast. Currently before the Court is Plaintiff Joe Hand Promotions, Inc.'s ("Plaintiff") motion for default judgment and an award of statutory damages, costs, and attorneys' fees under Federal Rule of Civil Procedure 55(b)(2) against Defendants Robin Waldron, Charlynn Waldron, and Mangia by the Greens, Inc. (collectively, "Defendants") (Doc. No. 11). For the reasons stated herein, the Court will grant Plaintiff's motion and enter judgment against Defendants in the amount of $3,600 in statutory damages under 47 U.S.C. § 605(e)(3)(C) and 47 U.S.C. § 553(c)(2)(B), and $4,352.50 in costs and attorneys' fees under 47 U.S.C. § 605(e)(3)(B)(iii) and 47 U.S.C. § 553(c)(2)(C).

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Plaintiff, a distributor of sports and entertainment programming, acquired the rights to distribute the "Machida/Shogun 2" UFC mixed martial arts match, including all under-card bouts ("Broadcast"), that aired on May 8, 2010.  Compl. ¶ 17.  The Broadcast originated via satellite uplink, and was subsequently retransmitted to various cable systems and satellite companies.  *Id.*  Plaintiff contracted with businesses in New Jersey to show the Broadcast.  *Id.* at ¶ 18.  Although Defendants did not enter into any such agreement with Plaintiff, they nevertheless intercepted the Broadcast signal and aired the program at their restaurant in Egg Harbor Township, New Jersey.[2]

Having learned of Defendants' actions, Plaintiff filed suit in this Court on February 15, 2011.  After Defendants failed to respond to Plaintiff's Complaint, Plaintiff sought, and subsequently received, the Clerk of Court's entry of default under Federal Rule of Civil Procedure 55(a).  Thereafter, Plaintiff moved on September 15, 2011 for a default judgment under Rule 55(b)(2) (Doc. No. 9).  The Court, in an order dated May 3, 2012, denied this motion upon finding that Plaintiff had failed to provide necessary facts in support of its affidavit that

---

[1] As a consequence of the Clerk of Court's entry of default against Defendants on July 21, 2011, and for purposes of deciding the instant motion for default judgment, the Court accepts as true the factual allegations in Plaintiff's Complaint, save those relating to the amount of damages.  *United States v. Pinsky*, No. 10-2280, 2011 WL 1326031 (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

[2] Plaintiff does not allege the precise manner in which Defendants intercepted the Broadcast signal.  On the one hand, they could have acquired it using a satellite receiver.  On the other hand, they could have intercepted the Broadcast after it was converted to a cable transmission.  The difference is relevant to identifying the proper cause of action under which Plaintiff may seek relief.  The unauthorized receipt of radio communications, including satellite transmissions, is proscribed by 47 U.S.C. § 605(a), while a different statute, 47 U.S.C. § 553 prohibits such reception of communications transmitted over a wired cable system.  In a case such as this one, where Defendants have failed to respond in any way to Plaintiff's Complaint and therefore are not available to engage in the discovery process, it is virtually impossible for Plaintiff to learn the specific method of interception of the Broadcast signal.  In such instances, courts in this district have found it proper to award statutory damages under either statute.  *See, e.g.*, *J & J Sports Prods., Inc. v. Perdomo*, No. 06-1374, 2007 WL 923522 at *2 (D.N.J. Mar. 26, 2007) (recognizing that the manner in which plaintiff's signal was intercepted "may be exclusively within Defendants' knowledge" and therefore not faulting plaintiff for failing to plead the particular manner of interception); *J & J Sports Prods., Inc. v. Edrington*, No. 10-3789, 2012 WL 525970 at *3 (D.N.J. Feb. 16, 2012) (acknowledging the approach of *Perdomo* and finding plaintiff's factual allegations sufficient to award damages under either section 553 or section 605).  The Court notes that the two statutes share a nearly identical remedial scheme, and that the judgment the Court will enter in this matter is appropriate in either case.  Thus, the Court will conduct its analysis with reference to both section 553 and section 605.

Defendants are not minors, incompetent persons, or persons in military service deserving of special protections from default judgment under the Servicemembers Civil Relief Act of 2003 (Doc. No. 10). In June 2012, Plaintiff filed a renewed default judgment motion, having supplemented its affidavits in response to the Court's order. (Doc. No. 11).

## II.     DISCUSSION AND ANALYSIS

Federal Rule of Civil Procedure 55(b)(2)[3] allows the Court, upon a plaintiff's motion, to enter default judgment against a party that has failed to plead or otherwise defend a claim for affirmative relief. While the decision to enter default judgment is left principally to the discretion of the district court, there is a well-established preference in this Circuit that cases be decided on the merits rather than by default whenever practicable. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180-81 (3d Cir. 1984). Consequently, the Court must address a number of issues before deciding whether a default judgment is warranted in the instant case. If it finds default judgment to be appropriate, the Court's next step is to determine a proper award of damages.

### A.     Appropriateness of Default Judgment

#### *i.     The Court's Jurisdiction*

First, the Court must determine whether it has both subject matter and personal jurisdiction over the defaulting party. *U.S. Life Ins. Co. in City of New York v. Romash*, No. 09-3510, 2010 WL 2400163 at *1 (D.N.J. June 9, 2010). Verifying the Court's jurisdiction to decide this cause of action is of particular concern where, as here, the defaulting party has failed to make any sort of appearance or submit any responsive communication to the Court.

In this case, Plaintiff alleges that Defendants' conduct violated 47 U.S.C. §§ 553(a) and 605(a); further, it has brought suit under the private cause of action provisions set forth in 47 U.S.C. §§ 553(c) and 605(c). The Court therefore has federal question subject matter jurisdiction

---

[3] Throughout this opinion, the Court will refer to the Federal Rules of Civil Procedure simply as the "Rules."

over Plaintiff's claim.  *See* 28 U.S.C. § 1331.  In addition, the Court exercises personal jurisdiction over all three named Defendants because they were physically located in the state of New Jersey at the time they were served with process in this matter.  *See* Fed. R. Civ. P. 4(k)(1)(A); N.J. Ct. R. 4:4-4(a) ("The primary method of obtaining in personam jurisdiction over a defendant in this State is by causing the summons and complaint to be personally served within this State . . . .").

  *ii.*  *Entry of Default*

Second, the Court must ensure that the entry of default under Rule 55(a) was proper.  Rule 55(a) directs the Clerk of Court to enter a party's default when that party "against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise."  In this case, all three Defendants were properly served with a summons and complaint on February 23, 2011.  (Doc. Nos. 5-7).  Thereafter, they failed to respond to the Complaint within twenty-one days of service as required under Rule 12(a).  Plaintiff attested to these facts in an affidavit attached to its request for default.  (Doc. No. 8).  Accordingly, the Clerk's entry of default under Rule 55(a) was appropriate.

  *iii.*  *Fitness of Defendants to be subject to default judgment*

Third, the Court will confirm that the defaulting parties are not infants or incompetent persons, or persons in military service exempted from default judgment.  *See* Fed. R. Civ. P. 55(b)(2); 50 U.S.C. App. § 501 *et seq.* (2006) (codification of the Servicemembers Civil Relief Act of 2003).  In this case, Plaintiff's counsel avers that the individual Defendants are neither infants nor incompetent persons.  Decl. of Ryan Janis ¶ 3 (Doc. No. 11).  While counsel does not specify whether he makes this claim upon personal knowledge or upon information and belief, his good faith affirmation under either circumstance is sufficient to comply with Rule 55(b)(2).

*See Firstbank Puerto Rico v. Jaymo Properties, LLC*, 379 Fed. App'x 166, 170 (3d Cir. 2010). Further, Plaintiff's counsel has submitted documentation from the Department of Defense Manpower Data Center indicating that neither of the individual Defendants has ever performed military service that would trigger the protections against default judgment afforded by the Servicemembers Civil Relief Act. Exhibit to Pl.'s Mot. for Default J. (Doc. No. 12). These documents respond sufficiently to the Court's order that Plaintiff establish facts necessary to support its affidavit regarding Defendants' lack of military service. (Doc. No. 10) (citing 50 U.S.C. App. § 521(b)(1)(A)). Thus, the Court finds that Defendants are subject to default judgment under Rule 55(b)(2).

    *iv. Plaintiff's Cause of Action*

Fourth, the Court must determine whether Plaintiff's Complaint states a proper cause of action against Defendants. In conducting this inquiry, the Court accepts as true a plaintiff's well-pleaded factual allegations while disregarding its mere legal conclusions. *See Directv, Inc. v. Asher*, No. 03-1969, 2006 WL 680533 at *1 (D.N.J. Mar. 14, 2006) (citing 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2688, at 63 (3d ed. 1998)). When a plaintiff seeks relief under either 47 U.S.C. § 605 or 47 U.S.C. § 553 for the unauthorized interception and broadcast of television programming, its burden is to show that the defendant "(1) intercepted a broadcast; (2) [was] not authorized to intercept the broadcast; and (3) showed the broadcast to others." *J & J Sports Prods., Inc. v. Edrington*, No. 10-3789, 2012 WL 525970 at *2 (D.N.J. Feb. 16, 2012). In addition, a plaintiff may receive enhanced damages if it can show that interception of the broadcast was willful and for commercial advantage or private gain. 47 U.S.C. § 605(e)(3)(C)(ii); 47 U.S.C. § 553(c)(3)(B).

In this case, Plaintiff alleges that Defendants intercepted the Machida/Shogun 2 UFC Broadcast transmission and exhibited that Broadcast at their restaurant in Egg Harbor Township. *See* Compl. ¶ 20.  These allegations suffice to establish the first and third elements of Plaintiff's prima facie case.  The Complaint also states that Plaintiff had been granted the right by contract "to distribute the Machida/Shogun 2 Broadcast . . . via closed circuit television and via encrypted satellite signal." *Id.* at ¶ 17.  Plaintiff entered into agreements with "various entities of the State of New Jersey, allowing them to publicly exhibit the Broadcast to their patrons." *Id.* at ¶ 18.  Further, Plaintiff alleges that Defendants had full knowledge that "the Broadcast was not to be received and exhibited by entities unauthorized to do so," but that they nevertheless "unlawfully intercepted" it using an illegal device. *Id.* at ¶¶ 20-21.  Based on the foregoing, the Court finds that Plaintiff has alleged just enough facts to satisfy the second element of its prima facie case.  Because Plaintiff had the rights to distribute the Broadcast in the State of New Jersey, and because Defendants never entered into any agreement with Plaintiff that would permit them to publicly display the Broadcast, the Court may infer that Defendants were not authorized to intercept the signal.  Accordingly, Plaintiff has stated a prima facie case for unauthorized publication of communications under either 47 U.S.C. § 553 or 47 U.S.C. § 605.

Finally, Plaintiff alleges that Defendants' conduct was willful because they were required to take affirmative illegal steps in order to intercept the Broadcast signal. *See id.* at ¶ 21.  The Court credits Plaintiff's contention that it would be virtually impossible to receive this encrypted broadcast inadvertently; rather, the interception must have involved actions taken with the intent to receive the Broadcast through illicit means. *Accord Event Entertainment, Inc. v. DeDios*, No. 97-2431, 1999 WL 447102 at *4 (D.N.J. June 24, 1999) (accepting plaintiff's assertion that "an encrypted program cannot be mistakenly or innocently intercepted") (internal quotations

omitted). Further, because Defendants displayed the Broadcast at their place of business, the Court may infer that Defendants' conduct was "for the purposes of direct or indirect commercial advantage or indirect pecuniary gain," rather than for enjoyment by private parties at home. *See* 47 U.S.C. § 605(c)(3)(C)(ii); 47 U.S.C. § 553(c)(3)(B). Thus, the Court may award Plaintiff enhanced damages.

    v.    Emcasco *factors*

Fifth, and lastly, the Court must consider the so-called *Emcasco* factors when determining whether to enter default judgment. The Court considers: (1) whether the defaulting party has a meritorious defense; (2) the prejudice suffered by the plaintiff seeking default; (3) the defaulting party's culpability in bringing about default. *Bridges Financial Group, Inc. v. Beech Hill Co., Inc.*, No. 09-2686, 2011 WL 1485435 at *3 (D.N.J. Apr. 18, 2011) (citing *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).[4] In this case, all three of these factors counsel in favor of granting a default judgment. First, there is no indication that Defendants

---

[4] It bears mention that these factors were originally developed in a context different than that of the instant case. *Emcasco* involved an appeal of a district court's denial of a defendant's motion to set aside a default judgment that had been entered against him. Thus, the Third Circuit panel was presented with a case in which the defaulting party actually made an appearance (albeit an untimely one) and expressed a willingness to defend the action on its merits. *See Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 73 (3d Cir. 1987). It was in this context that the court set out the three factors that the district court was required to consider and make "explicit findings" about before entering default judgment. *Id.* at 74. In the instant case, on the other hand, Defendants have shown no interest whatsoever in responding to the allegations in Plaintiff's Complaint.

In the context of a completely one-sided proceeding, the Court questions the factors' analytical value. This is because all three factors tend to be resolved against the defaulting party simply by virtue of that party's absence. With regard to the first factor, faced with a completely silent defendant, the Court has no basis from which to surmise the kind of meritorious defense, if any, the defaulting party might have asserted had it appeared. Thus, under these circumstances, it will almost certainly resolve the first factor in favor of default judgment. As to the second factor, a plaintiff will suffer some prejudice virtually any time the party against whom it seeks relief abstains from the litigation process and thereby attempts to foreclose that plaintiff's principal avenue for recovery. Finally, regarding the third factor, if it is appropriate to infer the defendant's culpability in bringing about default simply because of his failure to defend a civil suit for damages, courts will likewise resolve this factor in favor of default judgment any time they are faced with an absent defendant. The result is that the *Emcasco* analysis is likely to produce the same result every time a defendant fails to defend an action and a plaintiff moves for default judgment, thus rendering the test itself of limited applicability in this context. Having made these observations, the Court will proceed, as it is bound to do, to its analysis of the *Emcasco* factors in the present case.

have a cognizable defense to Plaintiff's allegations of unauthorized publication of communications.  Thus, this factor is either inconclusive, or it weighs slightly in Plaintiff's favor. *See Hill v. Williamsport Police Dept.*, 69 Fed. App'x 49, 52 (3d Cir. 2003) ("Because the defendants had not yet filed an answer, the District Court was unable to evaluate whether they had a litigable defense, [rendering this] factor . . . inconclusive."); *Dish Network L.L.C. v. Rounds*, No. 11-241, 2012 WL 1158798 at *3 (D.N.J. Apr. 6, 2012) (considering the *Emcasco* factors and noting that in light of defendant's failure to "[respond] in any manner to the Complaint [,]. . . [t]here is nothing to suggest that Defendant has a meritorious defense to liability").  Second, because Defendants have wholly failed to answer the Complaint or otherwise appear, Plaintiff suffers prejudice if it doesn't receive a default judgment because it has no alternative means of vindicating its claim against the defaulting parties.  *Accord Asher*, 2006 WL 680533 at *2.  Third, the Defendants' failure to respond permits the Court to draw an inference of culpability on their part.  *See Romash*, 2010 WL 2400163 at *3 (citing *Surdi v. Prudential Ins. Co. of Am.*, 2008 WL 4280081 (D.N.J. Sept. 8, 2008)).  Thus, the *Emcasco* factors weigh in favor of entering default judgment.

      *vi.*    *Conclusion*

In light of the foregoing analysis, the Court finds that Plaintiff is entitled to a default judgment against Defendants.  All that remains is to calculate an award of damages.

**B.**    **Damages**

Rule 55(b)(2)(B) specifies that a "court *may* conduct hearings . . . when . . . it needs to . . . determine the amount of damages" owed a party upon an entry of default judgment.  The permissive language of the rule recognizes that such a proceeding will not be necessary in all circumstances, however, such as when "damages are for a sum certain or for a sum which can by

computation be made certain." *Joe Hand Promotions, Inc. v. Krist*, No. 12-783, 2012 WL 6628934 at *1 (W.D. Pa. Dec. 19, 2012) (citing *J & J Sports Prods., Inc. v. Long*, 2009 WL 1563914 at *1 (E.D. Pa. Jun. 3, 2009). In this case, as Plaintiff seeks statutory damages, costs, and attorneys' fees, all of which can "by computation be made certain," the Court finds that it can award damages without a hearing.

However, while the Court may have all of the *facts* it needs to award damages, it is less clear how it should apply the relevant *law* to those facts. Specifically, faced with unchallenged allegations that a defaulting party has violated 47 U.S.C. § 553 and 47 U.S.C. § 605 by unlawfully intercepting and publically exhibiting a television broadcast, the Court will consider this statutory framework and the relevant case law interpreting it in order to arrive at a principled basis for awarding statutory and enhanced damages in these situations. The Court will then apply those principles to the facts of the instant case.

   i. *Section 553 and 605's Remedial Framework*

Under either section 553 or section 605, a private party "aggrieved" by the unauthorized reception of communications may be awarded statutory damages. 47 U.S.C. § 553(c)(3)(A)(ii); 47 U.S.C. § 605(e)(3)(C)(i)(II). Under section 553, these damages range from $250 to $10,000 per violation, while under section 605, they range from $1,000 to $10,000. *Id.* The Court is to choose an amount within these ranges that it "considers just" under the circumstances. *Id.* In addition, if the unauthorized reception of the communications was done "willfully and for the purposes of direct or indirect commercial advantage or private financial gain," the Court has discretion to award so-called "enhanced damages," increasing the range to $50,000 per violation in the case of section 553, and $100,000 per violation in the case of section 605. 47 U.S.C. § 553(c)(3)(B); 47 U.S.C. § 605(e)(3)(C)(ii).

### ii.     *Statutory Damages*

In this case, Plaintiff urges the Court to award the maximum $10,000 in statutory damages available under either statute. In support of this position, Plaintiff cites many cases involving statutory damages awarded under section 605, although only three of them hail from this Circuit.[5] Pl.'s Br. in Support of Default J. 8-11. Despite Plaintiff's contentions to the contrary, the Court finds Plaintiff's outside authority to be of limited persuasive value.[6] Thus, its analysis will focus primarily on relevant district court decisions from the Third Circuit.

Plaintiff first cites *Event Entertainment, Inc. v. DeDios*, No. 97-2431, 1999 WL 447102 at *3 (D.N.J. June 24, 1999), asserting that the court in that case awarded $15,000 in statutory

---

[5] Presumably recognizing that the actual damages they suffered as a result of Defendants' conduct amount to only about a tenth of the $10,000 statutory award they seek, Plaintiff cites a fourth district court case from this Circuit, *DirecTV, Inc. v. Gendrachi*, No. 03-1970, 2005 WL 350952 (D.N.J. Feb. 14, 2005), for the proposition that statutory damages serve an important deterrent function in addition to their primary purpose of compensating an aggrieved party for its injuries. Pl.'s Br. in Support of Default J. 8-9 (citing *Gendrachi*, 2005 WL 350952 at **3-4). However, Plaintiff fails to mention that in *Gendrachi*, the court awarded statutory damages under the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.*, which involves a different remedial scheme than either 47 U.S.C. § 553 or § 605. Further, *Gendrachi* involved specific allegations that the defendant purchased two circuit board devices called "bootloaders" for the purpose of unscrambling encrypted satellite signals. *Gendrachi*, 2005 WL 350952 at *1. Accordingly, the Court's award of statutory damages was specifically targeted at the "purchase, possession, and use of illegal equipment," rather than simply for the interception and exhibition of an unauthorized broadcast. Thus, the Court cannot ascribe much if any persuasive value to the $10,000 in statutory damages awarded in *Gendrachi* for purposes of determining damages in the instant case.

[6] Two cases cited by Plaintiff are from the Eastern District of California: *J & J Sports Prods., Inc. v. Flores*, No. 08-483, 2009 WL 1860520 (E.D. Cal. June 26, 2009) and *J & J Sports Prods., Inc. v. Esquivel*, No. 08-392, 2008 WL 4657741 (E.D. Cal. Oct. 20, 2008). They involve almost no discussion about the appropriateness of awarding the maximum statutory damages; rather, the court in both cases appears almost to presume that the maximum award will always be appropriate anytime a plaintiff states a viable section 605 or 553 claim against a defaulting defendant. For example, the *Flores* court noted that "[t]he facts before the Court show that Defendants' conduct had a relatively small impact," including a head count of only 35 customers, no cover charge, and no proof that the defendants profited from their actions. *Flores*, 2009 WL 1860520 at *2. Despite this finding, the court nevertheless concluded that $10,000 per statutory violation was the appropriate remedy. *Id.*

This Court does not agree that the maximum statutory penalty under either section 553 or 605 is appropriate in cases involving "relatively small impact[s]." The essence of both statutes' damages provisions is that the Court will award damages "as it considers just" within an appreciably wide range. Such a scheme strongly suggests a congressional intent that courts award greater statutory damages in cases of more serious conduct, and smaller damages in cases involving a relatively limited impact. *Accord Event Entertainment, Inc. v. DeDios*, No. 97-2431, 1999 WL 447102 at *3 (D.N.J. June 24, 1999) (declining plaintiff's invitation to award maximum statutory damages under section 605 and noting "its agreement with other courts in this circuit that the imposition of the maximum amount of statutory damages on a defendant generally requires some evidence of especially egregious circumstances") (citing cases). Thus, it would appear that the approach in the Eastern District of California to awarding statutory damages under 47 U.S.C. § 553 and § 605 differs substantially from that which obtains in the Third Circuit. Accordingly, the Court finds the *Flores* or *Esquivel* cases unpersuasive.

damages under section 605. However, the underlying facts of *DeDios* differ materially from those of the present case. First, only $5,000 of the $15,000 damages in *DeDios* was awarded under section 605(e)(3)(C)(i)(II). The other $10,000 was owing to a violation of section 605(e)(4) for the modification of equipment used primarily for unauthorized decryption of satellite signals. *Id.* at *4. Plaintiff in this case has not sought damages under this provision, and therefore that portion of damages awarded under it is irrelevant to the Court's analysis. Second, the court in *DeDios* mentioned specifically that its $5,000 damages figure under section 605(e)(3)(C)(i)(II) was increased "due to plaintiff's allegations that this is a repeat violation on the part of defendants." *Id.* Here, Plaintiff makes no allegation that Defendants had previously intercepted and exhibited unauthorized communications. Thus, the Court finds *DeDios* largely unpersuasive.

Plaintiff's reliance on two other district court cases from this Circuit is on sounder legal footing, but a close examination of those decisions seems to weaken, rather than strengthen, Plaintiff's position that a $10,000 statutory damages award is appropriate in the present circumstances. First, Plaintiff notes that the court in *Kingvision Pay-Per-View, LTD. V. Lardo*, No. 10-59, 2010 WL 3463316 (W.D. Pa. Sept. 1, 2010) awarded "$12,000 in damages." Pl.'s Brief in Support of Default J. 9. However, Plaintiff fails to note that only 25% of that figure, or $3,000, was the statutory damages award under section 605(e)(3)(C)(i)(II); the rest was awarded as enhanced damages under section 605(e)(3)(C)(ii). The Court acknowledges the *Lardo* court's careful analysis in arriving at an amount of statutory damages that furthered the dual goals of compensating the plaintiff in that case for the licensing fee it lost through defendant's unauthorized interception as well as deterring future piracy. *Lardo*, 2010 WL 3463316 at *3. Further, in *DirecTV, Inc. v. Cibulka*, No. 11-231, 2011 WL 3273058 (M.D. Pa. July 29, 2011),

11

the Court awarded the Plaintiff $2,500 in statutory damages because that amount was "just and appropriate under the circumstances of th[e] case." *Id.* at *1 n.3. Unfortunately, because the court delivered its judgment in the form of a cursory order, it is not clear what "circumstances" it actually relied upon in arriving at the $2,500 figure. Interestingly, the *Cibulka* court noted that the plaintiff had the "burden to show that an award of damages greater than the statutory minimum [was] warranted." *Id.* (citing *Directv, Inc. v. Walsh*, 540 F. Supp. 2d 553, 560 (M.D. Pa. 2008). Accordingly, the Court reads *Cibulka* and *Lardo* to call for a statutory damages award closer to the $1,000 end of the spectrum under section 605 (or the $250 end under section 553), rather than the $10,000 end, as Plaintiff urges.

While the foregoing analysis serves a helpful descriptive function in illustrating how courts in this Circuit have actually awarded statutory damages that they "consider just" for the unauthorized interception of exhibition of television broadcasts, it does not resolve an important normative question: namely, what should be the purpose of a statutory damage award in cases involving a motion for default judgment on a 47 U.S.C. § 553 and § 605 cause of action. One notion would be that a just award should seek to approximate a party's actual damages to the extent they can be ascertained. Another notion, advanced by Plaintiff and embraced by the *Lardo* and *DeDios* courts, is that the award should serve both a compensatory and a deterrence function.

To answer this question, the Court first looks to the statute itself.[7] Section 605(e)(3)(C)(i) calls for two alternative methods for calculating an aggrieved party's damages: that party may recover for its "actual damages" or it may recover "statutory damages . . . as the court considers just." *Id.* § 605(e)(3)(C)(i)(I); § 605(e)(3)(C)(i)(II). The fact that these two

---

[7] For purposes of simplicity, the Court will consider only 47 U.S.C. § 605, while noting that its analysis would apply with equal force to 47 U.S.C. § 553, given the two statutes' nearly identical remedial framework.

avenues of recovery are presented as alternatives to one another suggests to the Court that they should serve a similar purpose. Thus, since recovery of actual damages by its nature serves only a compensatory function, the statutory damages award should do likewise.

The Court finds this interpretation particularly appropriate in cases involving a default judgment against commercial defendants. In such cases, aggrieved parties will generally seek not only statutory damages, but also enhanced damages on the grounds that the unauthorized interception and exhibition of the television broadcasts was "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). Enhanced damages will generally be available, where, as here, the defendant's willfulness to intercept the signal and its purpose to do so for commercial advantage is simply inferred based on the allegations in an unanswered complaint, rather than determined in the context of adversarial proceeding. Thus, when the Court determines that both statutory and enhanced damages are appropriate on a motion for default judgment under 47 U.S.C. § 605, it will be inclined to award statutory damages that approximate the actual injuries suffered by the aggrieved party, and to enter an enhanced damages award that reflects the need for both specific and general deterrence, and that takes account of the seriousness of the defaulting party's conduct.

With these principles in mind, the Court turns to the present case. Having successfully alleged a violation of both 47 U.S.C. § 553 and § 605, Plaintiff is entitled to statutory damages. Based on the affidavits accompanying its motion for default judgment, Defendants, operating a restaurant that could accommodate approximately 150 patrons, would have had to pay $1,200 for a license to show the Broadcast in question. *See* Pl.'s Brief in Support of Default J. Exh. A-2, A-3. Plaintiff has not alleged that it suffered any other actual harm as a result of Defendants'

conduct. Thus, the Court awards Plaintiff $1,200 in statutory damages under either 47 U.S.C. § 553(c)(3)(A)(ii) or 47 U.S.C. § 605(e)(3)(C)(i)(II).

    *ii.*    *Enhanced Damages*

Because the Court has found that Defendant's interception and exhibition of the UFC match was willful and for the purposes of direct commercial advantage, it may award Plaintiff enhanced damages. *See* 47 § 553(c)(3)(B); 47 U.S.C. § 605(e)(3)(C)(ii). The Court will thus determine an appropriate amount of damages under these provisions.

A review of the relevant case law[8] in this Circuit convinces the Court that there are few bright line rules governing the its discretion to award enhanced damages under either statute. On the one hand, some district courts have embraced a multi-factor test from the Southern District of New York. *E.g.*, *J & J Sports Prods., Inc. v. Munguti*, No. 06-1282, 2007 WL 928479 at *3 (D.N.J. Mar. 27, 2007) (citing *Kingvision Pay-Per-View Ltd. v. Rodriguez*, No. 02-7972, 2003 WL 548891 at *2 (S.D.N.Y. Feb. 25, 2003)); *J & J Sports Prods., Inc. v. Gallegos*, No. 08-201, 2008 WL 3193157 at *4 (D.N.J. Aug. 5, 2008). Under this approach, a court may consider (1) whether the defendant has intercepted unauthorized broadcasts repeatedly and over an extended period of time; (2) whether it reaped substantial profits from the unauthorized exhibition in question; (3) whether the plaintiff suffered significant actual damages; (4) whether the defendant advertised its intent to broadcast the event; and (5) whether the defendant levied a cover charge or significant premiums on its food and drink because of the broadcast. *Rodriguez*, 2003 WL 548891 at *2.

---

[8] Somewhat surprisingly, Plaintiff, in the section of its brief on enhanced damages, does not cite to a single case from the Third Circuit, despite the fact that numerous district courts in this circuit have considered damages awards under sections 553 and 605. *See, e.g.*, *Edrington*, 2012 WL 525970 (D.N.J. Feb. 16, 2012); *Lardo*, 2010 WL 3463316 (W.D. Pa. Sept. 1, 2010); *J & J Sports Prods., Inc. v. Perdomo*, No. 06-1374, 2007 WL 923522 (D.N.J. Mar. 26, 2007). Accordingly, for reasons similar to those expressed in subsection *ii.* regarding case authority and statutory damages awards, the Court ascribes little precedential value to Plaintiff's cited cases in determining an award of enhanced damages.

On the other hand, some courts have approached the enhanced damages analysis in a more cursory manner. *See, e.g.*, *Cibulka*, 2011 WL 3273058 at *1 n.4 (finding an award of enhanced damages equal to three times the statutory amount to be appropriate in order to help deter the defendant from further illegal broadcasts); *Joe Hand Promotions, Inc. v. Krist*, No. 12-783, 2012 WL 6628934 *1 (W.D. Pa. Dec. 19, 2012) (awarding $5,000 in enhanced damages in addition to $1,000 in statutory damages upon finding, without further analysis, that the enhanced award was "sufficient for the purposes of punishing Defendants' conduct and deterring future violations") (citing *Joe Hand Promotions, Inc. v. Piacente*, 2011 WL 2111467, at *8 (N.D. Cal. Apr. 11, 2011)).

Finally, at least one district court appears to have combined the two approaches; that is, after running through the *Rodriguez* factors and determining that all but one of them did not apply to the case before it, the court awarded enhanced damages equal to treble the statutory damage amount. *Lardo*, 2010 WL 3463316 at *4 (quoting *King Pay-Per-View, Ltd. v. Gutierrez*, 544 F. Supp. 2d 1179, 1185 (D. Colo. 2008) ("[A]n award [of $15,000 in enhanced damages equal to] treble the principal damages . . . adequately addresses the willfulness of Defendants' illegal conduct; should serve as a deterrent for future violations; and recognizes that it is only fifteen percent of the statutory maximum since no aggravating factors exist.") (internal quotations omitted).

Applying the *Rodriguez* factors to this case, there is no evidence that Defendants had previously intercepted and exhibited unauthorized broadcasts. Further, there are no allegations that they charged a cover fee to watch the Broadcast, charged a premium on food and drink, or advertised the event. As stated in subsection *ii.*, Plaintiff's actual loss appears to be the cost of the broadcast license, which under the circumstances would be $1,200. Finally, while it appears

that about 70 patrons were present during the fight, and it was being shown on six 42-inch TV's throughout the restaurant, the Court cannot conclude with any certainty the extent to which those patrons' presence was owing to the fight (which was unadvertised) rather than the Defendant's normal flow of business on a Saturday night in early May.[9]

On these facts, the Court finds that the Defendants' conduct was not so egregious as to warrant a substantial award of enhanced statutory damages under sections 553 and 605. Instead, the Court will award Plaintiff an additional $2,400 in enhanced damages. Such an award will help to deter future violations by these and similarly situated parties; the failure to obtain a license from Plaintiff results in their having to pay three times what they would have otherwise had to pay in order to show the broadcast to their patrons. At the same time, the limited nature of the enhanced damages award recognizes the lack of repeated offenses by Defendants, as well as the lack of overt efforts to use the ill-gotten broadcast as a means of boosting their restaurant's revenues.

    *iii.*    *Costs and Attorneys' Fees*

Finally, Plaintiff seeks to recover costs and attorney's fees related to this action. Both sections 553 and 605 direct the court to award such relief to an aggrieved party who prevails on its claim. 47 U.S.C. §§ 553(c)(2)(C), 605(e)(3)(B)(iii) (providing for recovery of "full costs, including . . . reasonable attorneys' fees"). Plaintiff's counsel has submitted an affidavit detailing the costs and attorney's fees incurred in the prosecution of this action. Pl.'s Br. in Support of Default J., Exh. B. Such costs include $500 in pre-suit investigative costs[10] and $425

---

[9] For example, it appears that a live band was playing at the time Plaintiff's investigator visited Defendants' restaurant. Pl.'s Br. in Support of Default J., Exh. A-2. In addition, the establishment was described as a "bar/restaurant," thereby at least suggesting that perhaps many of the 70 patrons present had interest only in having a meal, rather than watching the screens that, by Plaintiff's admission, were surrounding only the bar. *Id.*

[10] It appears that this fee was paid to Plaintiff's investigator to make a site visit to Defendants' restaurant and file an affidavit with the Court.

16

to file suit and serve Defendants with process. *Id.* In addition, Plaintiff's counsel provides a detailed summary of the hours he and his staff worked on this matter, which, at the hourly rates provided, totals $3,427.50. The Court is satisfied that these costs and fees are reasonable, and thus it will award Plaintiff the full amount requested.

### III.  CONCLUSION

For the reasons stated above, the Court will grant Plaintiff's motion for default judgment. Accordingly, it will enter judgment against Defendants in the amount of $7,952.50, representing $1,200 in statutory damages, $2,400 in enhanced damages, $925 in costs, and $3,427.50 in attorneys' fees. The Court will issue an appropriate order.


Dated:   3/13/2013                                                                  /s/ Robert B. Kugler
                                                                                                  ROBERT B. KUGLER
                                                                                                   United States District Judge